UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| WAYNE GRAY, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 11-CV-4261 |
| UNITED STATES OF AMERICA d/b/a UNITED STATES POST OFFICE, | ) ) ) ) ) | Judge John W. Darrah |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

On June 23, 2011, Plaintiff Wayne Gray filed suited against Defendant, the United States Postal Service ("USPS"), alleging that, as a result of USPS's negligence, Gray was injured upon exiting the United States Post Office in Oak Lawn, Illinois. (Compl. ¶¶ 8-9, 11-12.)

Discovery closed on August 6, 2012, and a bench trial commenced on February 11, 2013, concluding on February 13, 2013.

The bench trial included the testimony of several witnesses and the admission of various exhibits into evidence. The parties also submitted written closing arguments, and Gray was permitted to file a written rebuttal argument. The parties also submitted proposed findings of fact[1] and conclusions of law.

The Court has considered the evidence, including the testimony of the witnesses and exhibits, and has further considered the written submissions of counsel for the parties and the authority cited therein. The Court weighed the testimony of each witness and determined

---

[1] To the extent a proposed finding of fact relied on information not in evidence at trial, it was disregarded.

whether the testimony was truthful and accurate (in part, in whole, or not at all) and decided what weight, if any, to give to the testimony of each witness.  In making this determination, the Court considered, among other things:  the ability and opportunity of the witness to see, hear, or know information about which the witness testified; the witness's memory; any interest, bias, or prejudice the witness may have; the witness's intelligence; the manner of the witness while testifying; and the reasonableness of the witness's testimony in light of all of the evidence in the case.  *See* Fed. Civ. Jury Instr. 7th Cir. § 1.13 (2009).

Pursuant to Fed. R. Civ. P. 52, the Court enters the following written Findings of Fact and Conclusions of Law, which are based upon consideration of all the admissible evidence and this Court's own assessment of the credibility of the trial witnesses.  To the extent, if any, that Findings of Fact, as stated, may be considered Conclusions of Law, they shall be deemed Conclusions of Law.  Similarly, to the extent, if any, that Conclusions of Law, as stated, may be considered Findings of Fact, they shall be deemed Findings of Fact.  The Decision section of this Opinion and Order, for purposes of organization and clarity, contains some reference to law and facts.  To the extent, if any, that any part of the Decision may be considered Findings of Fact or Conclusions of Law, it shall be so deemed.

## FINDINGS OF FACT

This case involves a slip and fall that occurred on June 15, 2010, at the Post Office operated by the USPS, located at 9249 S. Cicero Avenue in Oak Lawn, Illinois.  Gray is a citizen and resident of Oak Lawn, Illinois, and was 66 years old at the time of the incident.

Gray suffered from polio at the age of five, requiring him to be in an iron lung for six months.  As a child, Gray walked with crutches and braces for about two years; then, he learned to walk without assistive devices.  In more recent years, Gray was diagnosed with post-polio

2

syndrome, which can cause atrophy of muscles in individuals who previously suffered from polio. Since 2004, Gray has walked with a brace for his left foot to correct his "foot drop." This brace extends from his left knee to his left foot. Since approximately February 2010, Gray has worn a brace on his right leg that extends from his right thigh to his right toe to help correct the hyperextension in Gray's right knee. In addition to the leg braces, Gray has walked with the assistance of a cane for at least five years. Gray's left leg is also a quarter inch shorter than his right leg, which causes him to limp. Gray has an abnormal gait.

Gray visited the Post Office on June 15, 2010, at approximately noon, to purchase stamps and mail some correspondence. The Post Office's entrance and exit is through a set of glass double doors, which open outwards. Viewing the interior of the Post Office from inside the entrance, a customer service counter is on the left, mailboxes are straight ahead and to the right, and outgoing mail slots are located directly in front of the doors.

Inside the entrance to the Post Office, directly beyond the glass double doors, was a floor mat. The floor mat was made of carpet mounted on a rubber mat; the edges of the mat are beveled toward the floor and made of rubber. This floor mat and others are placed on the Post Office floor year-round to prevent the floor from being slippery during inclement weather and to reduce the tracking in of dirt. These floor mats are cleaned every two weeks. The staff and management of the Post Office had no notice of any defect with the floor mats.

Gray crossed over the floor when he entered the Post Office, without incident. However, when Gray attempted to exit the Post Office, he fell forward and struck the frame of the entrance door with his left shoulder.

Immediately after the fall, the floor mat lay flat against the floor, and no raised portion or "bubble' was present. After Gray fell, the manager of the Post Office, Kimberly Folga, went to

3

him, and upon learning that Gray felt pain in his shoulder, called for the paramedics. Prior to the incident, no one had tripped on the mat, or complained about the mat.

Thereafter, the paramedics brought Gray to the Christ Medical Center emergency room, where it was determined he had dislocated his shoulder; there, his shoulder was reduced and put back in place. His shoulder was placed in an immobilizer, and he was released from the emergency room later that day. An MRI performed weeks after Gray's fall revealed he had a torn rotator cuff. Gray had outpatient arthoscopic surgery on October 5, 2010. He received physical therapy after the surgery and continues to feel pain in his shoulder, though he takes no pain medication for it.

## CONCLUSIONS OF LAW

*Jurisdiction*

The Court has subject-matter jurisdiction over this case pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1). Cases brought under this Act may only be brought in federal court. The substantive law of the state in which the alleged tort occurred, Illinois, is applicable. *See Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001) (citing 28 U.S.C. § 1346(b)); 28 U.S.C. § 2674.

*Applicable Illinois Law*

In order to prevail on a claim of premises liability[2], a plaintiff must prove: (1) he was owed a duty of care by defendant; (2) that duty was breached, causing plaintiff to be injured; and

---

[2] Gray filed a motion *in limine* to exclude references to the Illinois Governmental Tort Immunity Act, 745 ILCS 10/3-102. Gray correctly argues that the Government's failure to assert the Tort Immunity Act is an affirmative defense results in it being waived. Fed. R. Civ. P. 8(c) requires a defendant to plead any affirmative defenses in its answer to the complaint. The Government failed to raise the issue of the Tort Immunity Act until just weeks before trial, though the availability of this defense was "reasonably apparent" long before. *Niebur v. Town of*

4

(3) the defendant had actual or constructive notice of the unsafe condition in time to correct it. *Franke v. United States*, No. 99 C 3076, 2000 WL 1263657, at *3 (N.D. Ill. Sept. 1, 2000) (citing 745 ILCS 10/3-102(a)). "The factors for a court to consider in examining the existence of a duty include: the reasonable forseeability of injury; the likelihood of injury; the magnitude of the burden to guard against it; and the consequences of placing blame on the defendant." *Id.* (citations omitted). The United States, as a landowner, is not "ordinarily required to foresee and protect against injuries resulting from dangerous conditions that are open and obvious." *Masterson v. Target Corp.*, No. 05 C 5106, 2007 WL 2298411, at *2 (N.D. Ill. Aug. 3, 2007).

To prevail on a claim that the United States breached its duty to exercise ordinary care, the plaintiff must demonstrate that the United States had "actual or constructive notice of the allegedly unsafe condition in time to correct it." *Stewart v. United States*, 918 F. Supp. 224, 226-27 (N.D. Ill. 1996). "Constructive notice is established where the condition has existed for a length of time or was so conspicuous that authorities exercising reasonable care and diligence would have known about it." *Watkins v. United States*, No. 00 C 8095, 2005 WL 1863448, at *14 (N.D. Ill. Mar. 10, 2005) (quoting *Stewart*, 918 F. Supp. at 227). The plaintiff bears the burden of demonstrating the defendant had notice. *C.D.L., Inc. v. East Dundee Fire Protection Dist.*, 624 N.E.2d 5, 11 (Ill. App. Ct. 1993).

Both parties here agree Illinois Pattern Jury Instruction 120.08 accurately states the applicable law. The Jury Instruction provides:

In order to recover damages, the plaintiff [Gray] has the burden of proving:

---

*Cicero*, 212 F. Supp. 2d. 790, 819-20 (N.D. Ill. 2002). Accordingly, Plaintiff's motion *in limine* [25] is granted.

5

First, there was a condition on the property which presented an unreasonable risk of harm to people on the property.

Second, the defendant knew or in the exercise of ordinary care should have known of both the condition and the risk.

Third, the defendant could reasonably expect that people on the property would not discover or realize the danger or would fail to protect themselves against such danger.

Fourth, the defendant was negligent in one or more of the following ways:
a) failed to use ordinary care in the operation or maintenance of the property,
b) knew or in the exercise of reasonable care and caution should have known of the dangerous and defective condition of the premises,
c) negligently failed to repair the defective condition where the plaintiff fell, when the defendant should have known such repairs were necessary,
d) negligently failed to make a reasonable and proper inspection of the area where plaintiff fell with reasonable frequency and diligence,
e) failed to warn plaintiff of the existence of the hazardous condition, when defendant knew or should have known of the existence of that condition

Fifth, the plaintiff was injured.

Sixth, the defendant's negligence was a proximate cause of the plaintiff's injury.

Illinois Pattern Jury Instruction 120.08.

## DECISION

Of the six elements described above, the only element Gray proved at trial was that he was injured. Gray failed to demonstrate an unreasonable risk of harm existed, that the Post Office failed to exercise ordinary care, or that the Post Office was negligent.

Gray contends that when he exited the Post Office, a portion of the mat was raised approximately one and a half to two inches and that this raised portion caused Gray to fall forward and strike the door frame with his left shoulder. However, Gray failed to prove at trial that the floor mat presented an unreasonable risk of harm to him. The only evidence Gray presented that some risk was associated with the floor mat was his own, unsubstantiated assertion after he fell that there was a one and a half to two-inch bubble in the floor mat, which

may have caused him to trip and fall. Gray described the bubble in the floor mat as "absolutely obvious" to him after he had fallen and was observing the floor mat. Despite this puported large bubble in the mat, it was not "obvious" to him *prior* to his fall. Gray also testified that he told Folga he tripped on a bubble in the floor mat, and Folga responded to Gray, while he lay on the floor, that there was no bubble.

Folga, the manager at the Post Office, testified that she had never before (or since) been informed of problems with the floor mats, nor had she noticed that the floor mats had air bubbles which could present an unreasonable risk of harm to customers. She further testified that the mat was perfectly flat and that it was not adjusted after Gray was taken the hospital. Gray's wife, Linda, and daughter, Audra, came to the Post Office after they were informed by Folga that Gray had fallen. Before Gray left the Post Office in an ambulance, he instructed Audra to go back to their home, obtain a camera, and return to the Post Office to take photographs of the area in which he fell, including the floor mat. None of these photos taken by Audra, which were in evidence, show any indication of a bubble in the floor mat.

The floor mat in the Post Office did not pose an unreasonable risk of harm. Gray has not proven that a bubble in the floor mat was present at the time of his fall. Moreover, even if this bubble was present, Gray himself admits that such a bubble would have been obvious to him as he approached the floor mat. *See Masterson v. Target Corp.*, No. 05 C 5106, 2007 WL 2298411, at *2 (N.D. Ill. Aug. 3, 2007) (providing landowners "are not ordinarily required to foresee and protect against injuries resulting from dangerous conditions that are open and obvious. . . . [which exists when] both the condition and the risk are apparent to and would be recognized by a reasonable person, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.") (citations and quotations omitted).

7

Accordingly, Gray failed to prove at trial that there was a condition at the Post Office which presented an unreasonable risk of harm to customers like Gray. Because no real risk of harm existed at the Post Office with respect to the floor mat, the United States did not breach its duty to exercise ordinary care with respect to the floor mat. Even if the floor mat had presented some dangerous condition, no employee of the Post Office had actual or constructive notice that a dangerous condition existed. Indeed, since 2007 through the time of trial, there were no other accidents involving floor mats reported at that Post Office.

It is apparent from all of the evidence presented at trial that Gray's injury was caused not by some bubble in a floor mat, but by his own abnormal, belabored gait, which was observed by the Court at trial. Gray walks with a brace on each leg and with the assistance of a cane, in addition to having one leg shorter than the other, all while suffering from post-polio syndrome. While Gray demonstrated at trial that he was able to lead a fulfilling and active life, Gray could not rebut the clear evidence that his gait causes him to be off-balance. The fact that Gray asserts he has not otherwise fallen while walking with his assistive devices does nothing to rebut the overwhelming likelihood that his own physical impairments, rather than a possible, miniscule air bubble in a floor mat, caused him to fall.

Even if the floor mat in question was in some way defective, or had previously been kicked or altered by another individual walking on it, Gray did not introduce any evidence that the employees of the Post Office had knowledge of such a defect. To the contrary, Folga testified that in her eleven years as an employee at the Post Office, no one had tripped on the floor mats. The Postmaster further testified that the floor mats in question were walked upon approximately 240,000 times each year for several years, with no reports of injury identified in the Postal Service's safety records. The injury resulting from Gray's fall was unfortunate but in

no way caused by negligence on the part of the United States. The United States is not liable for Gray's injury.[3]

## CONCLUSION

As explained above, Gray failed to meet his burden of proof that the Government was liable for his injury; indeed, no unreasonable risk of harm existed at the time of Gray's fall with respect to the floor mat. Accordingly, the Government did not breach any duty owed to Gray, nor did it fail to exercise ordinary care in order to avoid such an injury. Judgment is entered in favor of the United States.

Date: August 22, 2013

_____
JOHN W. DARRAH
United States District Court Judge

---

[3] Additionally, as this decision did not rely on the testimony of either David Ulaszek, M.D. or Nancy Riesbeck, PT, the Government's Motion *in Limine* to Exclude Plaintiff's Proposed Expert Opinions [23] is denied as moot.